Thank you both. Thank you. Thank you. We will now be hearing argument in the case of Northwest Association of Independent Schools et al versus Labrador. If we have our people here, Mr. Trowell and Mr. Hearst. All right, they're both there. You gentlemen are all ready to go. So I think Mr. Trowell, did you say Trowell? Yes, Your Honor. Thank you. Okay, please proceed. Thank you. Good morning. May it please the court. My name is Kevin Trowell for Free and Fair Litigation Group on behalf of the Northwest Association of Independent Schools, Sun Valley Community School and Foothills School of Arts and Sciences. I'd like to reserve four minutes for rebuttal if I may. Idaho House Bill 710 is a facially overbroad and vague effort to restrict the speech of private entities like plaintiffs that enjoy the full protection of the First Amendment. HB 710 fails to incorporate the First Amendment protections required by Miller and his progeny, protections that ensure that states don't prohibit the use and distribution of constitutionally protected materials simply because those materials are unpopular with some segment of the population. HB 710 doesn't protect all works that have serious value for minors. And as defendants concede on page 29 of their responsive brief, HB 710 nowhere says that prairie and interest of a work must be assessed as a whole and must predominate as the First Amendment requires. Comparison to Idaho's adult obscenity statute found in section 18-4101 makes clear that these omissions are not inadvertent. These are not the only two deficiencies in HB 710 but simply the two most egregious. Against this backdrop, the definitional provisions of HB 710 sweep within the law's ambit an extraordinary amount of protected material, far more than the Oregon statute this court invalidated in Powell's books, including materials that are plainly protected by the First Amendment. The district court had to effectively rewrite HB 710 to bring it into compliance with the First Amendment, but the district court's analysis is at odds with the statute's plain language and contrary to binding precedent, and unappealed defendants say very little in its defense. Sun Valley, Foothills, and the other Idaho-based members of NWAIS want only to do what the First Amendment's demand, that is to use constitutionally protected materials to create and disseminate curricula that are, in the judgment of the schools and the parents that choose them, best for their students. HB 710 denies plaintiffs, parents, and students the ability to pursue this goal free from the threat of litigation, and the district court abused its discretion in concluding otherwise. I'd like to begin, if I may, your honors, with HB 710's failure to incorporate the serious value element from Miller and its progeny. In Miller itself, the court acknowledged the dangers inherent in undertaking to regulate any form of expression, and made clear that any regulation must be carefully limited. The court noted in particular that the serious value prong and the purian interest as a whole prong were essential to ensuring that protected materials were excluded from the narrow prohibition of obscenity. The court later described in Reno versus ACLU, again reiterated the importance of those prongs, and noted that the serious value prong serves as a national floor, an objective standard that ensures that protected materials are protected everywhere, wherever, in any jurisdiction in the U.S., precisely because they have value to minors. The provision that's found in HB 710 does not accomplish this goal. We raise a number of arguments about the provision, including its structure and some word choices within the provision, but I'd like to focus my argument, if I may, on what we've described as the context clause. That clause suggests that, well, first of all, to step back for a moment, there's no question that that clause intends to exclude some protected material from the First Amendment. It's not found in Miller. It's not found in any of Miller's and it clearly is intended to suggest that some material that has serious value is excluded from the protection of the First Amendment because of the context in which it's used. That has never been approved. That language has never been approved by any court, and for good reason. Ginsburg suggests a single standard between adults and minors. That's a standard that's been applied repeatedly. States across the United States have enacted statutes that do what Ginsburg permits. The Eleventh Circuit recently addressed a statute that does what my friend suggests HB 710 does, which is to divide that single division between adults and minors and then subdivide the minor half into something like 18 separate categories or perhaps as many as the Eleventh Circuit noted as 6,775 distinct categories where schools, teachers, parents are required to assess the value of a work as it applies to an individual child. Whether that means an individual age group, an individual grade, whether that depends on the particular emotional and intellectual capabilities of any given child, we're left to guess. But the assertion is that that provision permits the state to distinguish among groups within the broad category of minors. As I've noted, no court has ever approved that, and I would suggest, Your Honors, that this court should not be the first for a host of practical and constitutional reasons. I'm happy to answer further questions about that and also happy to move to the second issue I'd like to discuss, which is the prurient interest element of Miller. There too, Your Honor, the clause found in the statute fails to do what Miller requires. Prurient interest, a number of cases have addressed the prurient interest requirement of Miller, and the point of it, of course, is to ensure that individual depictions or representations or descriptions are not taken out of context. That is precisely what happens with HB 710. Prurient interest must be assessed as a whole because, as the Court noted in Coyce v. Wisconsin and a number of other cases, the context, and by context there I'm not talking about the age group of the minors, but I'm talking about where a particular description, depiction, or representation falls within a broader work, is essential to assessing whether the work as a whole is protected. Here HB 710 fails to take that key protection into account and suggests on its face that individual descriptions or depictions found within a broader work that may be offensive or that may, in the judgment of, because prurient interest is a even if they fall in a work that itself as a whole does not, that those individual descriptions or depictions may be treated as obscene. What follows from that is also not clear. Must they be removed from the work, sort of pages torn out of books, or does that in turn mean that the whole work is treated as obscene because it contains an image that under this malformed Miller standard is itself treated as obscene? In either event, Miller and its progeny don't approve of that structure and protect works, protect any work except those that appeal to the prurient interest predominantly as a whole and that lack serious value. Council, let me ask you this. I don't remember seeing this, but is there anything in the legislative history of HB 710 that indicates why the Idaho legislature made the changes that it did? Obviously, until that point, they largely tracked Miller. There was a change, though, that allowed basically parents, others to be private litigants, suing school district librarians, teachers, and the like to make them into, if you will, instant constitutional lawyers. Is there anything in the legislative history that gives us any indication of what motivated the change and what was intended? Well, Your Honor, I believe that there's an earlier statute that tracks in some substantial ways the language of HB 710. There are changes that the legislature made to, as my friend has suggested, to reflect changes in the law dating back several decades to Brockett v. Spokane. I'm going to get the case name wrong, but dating back some ways to correct for that. But other than that, the context clause exists in the adult obscenity statute presently in Idaho. I think that's an important point for the court to recognize because the context clause with respect to adults cannot be discerning among age groups. Because adults, if you're an adult, if you're over the age of 18, you are entitled to access non-obscene works. So the context clause in 18-4101 must mean something other than a distinction between 22-year-olds and 65-year-olds. Well, that same clause is found in HB 710, and in that provision, my friend suggests, that is intended to distinguish among groups of minors. That's a little to the question, Your Honor. But the point, I think, is that the earlier version of the statute, which I believe is in 18-1515, is quite similar to this. And I would suggest, Your Honor, that it also doesn't track Miller in some pretty important ways. The new statute does include the new enforcement provisions, including the citizen enforcement provision and so on, the private cause of action. But the substance in terms of the context clause, the absence of purring interest as a whole, and from our perspective, the deficient serious value element, are all present in the earlier statute and are carried through to this version as well. I would just point out, Your Honor, that my friend points out in their briefing that from their perspective, the legislature was trying to enact a constitutional law. That may well be. We've cited in our complaint some atmospheric evidence to suggest that that may not have been the overarching desire, politically speaking, but I think that's neither here nor there. The legislative history, we wouldn't expect it to show that they were intentionally enacting an unconstitutional law. And as this court explained in Powell's books, a legislature's good intentions are not sufficient when the law on its face fails to accomplish the goal that has been set for it by the Supreme Court. So from our perspective, Miller is very clear. Miller sets up a very limited exclusion that is a bright line, difficult in application sometimes to be sure, but that's precisely why the line must be drawn so brightly. Miller says anything on the Miller side of the line may be prescribed, anything on the other may not categorically. And any statute that exceeds the bounds of Miller and its progeny is unconstitutional on its face, and that's why or any that I've made so far. It would be helpful to me if you could spend some time talking about whether HB 710 by including homosexuality and sexual conduct, whether that's actually sweeping in non-sexual acts. It seems to me that there's a lot of limiting language in HB 710 that would mean that innocuous sort of non-sexual acts would not be included, but then I'm also having trouble figuring out what the word homosexuality is doing in there. So it'd just be helpful to me if you could spend some time. Absolutely, Your Honor. Thank you. So you're referring to the provision in 18-1514 that defines the term sexual conduct. That's right. And what we see there, and I think what our clients are struggling with as they try to figure out what they are permitted to teach under HB 710, we've noted in the complaint and in the affidavits we've submitted that the schools, that both schools use materials that depict characters that are homosexual, engaged in same-sex relationships, and so forth, and speak about these issues in ways that are plainly not obscene and constitutionally protected. But when you look to sexual conduct, the defined term, what you see is that homosexuality is unlike the other terms in that affidavit. So you have terms that have masturbation, sexual intercourse, or physical conduct, and the physical contact clause there seems to be aimed at physical conduct of a sexual sort, even though the participants are clothed. Whether that might constitute obscene conduct, I think, is a separate question. But what that suggests is that because the word heterosexuality is not found in that list, all of that, homosexuality must mean something other than homosexual sex, sorry, sexual, because heterosexuality is not found in that list, homosexuality must be referring to something other than those items that are included in the list. So there's no need to say homosexuality if homosexuality means homosexual sexual intercourse, because sexual intercourse is already included in the list. So if we are, I think as we must, trying to give each word in that clause an independent meaning, recognizing that there can of course be some overlap, homosexuality must mean something other than homosexual sexual intercourse, or homosexual physical sexual conduct, which leads us to wonder and conclude that it means things that sweep far beyond that list, and would sweep in, for example, innocuous conduct by same-sex characters. And I think my friend in suggests that the reason that that was included in 2024 when this act was passed was because in 1976 there would have been a question about what that term meant. So if you had excluded the term homosexuality in 1976, it would have been unclear that the statute was intended to sweep in homosexual sexual intercourse. We've pointed to a number of sites and a number of sources in our brief that we think rebut that assertion, showing that in Idaho the phrase sexual intercourse has included heterosexual and homosexual sexual intercourse for a number of decades, but also it struck us as not a normal mechanism of statutory interpretation to look at a current statute enacted in 2024 and ask how it would have been understood in 1976. The question is when you at this today and you look at that list and you ask what does this term mean, I think one must conclude that it doesn't mean homosexual sexual intercourse or homosexual physical contact because both of those terms are separately included. And so that's the concern we've raised there, is that it seems to sweep well beyond those. But then I wonder what we do with with section 18, 15, 14, sub 6, that it sort of limits the definitions to intimate sexual acts, normal or perverted, etc. I'm wondering if that doesn't sort of save the fact that homosexuality is in there and otherwise doesn't make much sense as you've pointed out. I mean, why can't we think that's being limited? I don't think so, your honor. And I think the reason for that is because, as we've also pointed out, the definition in sub 6 of harmful to minors is the only definition in this statute that describes what the phrase includes rather than what it means. And it does that in a couple different places. So if you look at the first line of 6, it says harmful to minors includes in its meaning and then includes some information there. Then when you go down to the bottom of sub paragraph B, it again says material for minors and includes but is not limited to the following categories. And so in two separate places, harmful to minors says on its face, and this is unlike every other definition found in HB 710, that it's not purporting to describe what that term means, but merely what it includes. There's been some significant back and forth between my friend and us about what that means there and the significance of the word includes versus the word means. But I would submit, your honor, that my friend has not cited a single case in any court in which the court has understood the word includes to be a strictly limited definition when in the context of a statute that separately uses the word means. So if one looks at the definitions in 1514 and sees that they all use the word mean, 1, 2, 3, 4, 5, and then 7 through 11, and then notices that 6 takes a different approach, one is left to conclude that the legislature meant something different by that. And from our perspective, what that is doing is suggesting that the phrase harmful to minors sweeps well beyond the categories that are listed within that definition and encompass things like we were just describing from the definition of sexual conduct, including potentially innocuous and non-sexual conduct. Thank you. Judge Wynn, do you have questions? No, thank you. All right, well, do you want to retain the balance of your time then at the trial? Yes, your honor, thank you. Okay, all right, Mr. Hurst, please. Thank you, your honor. May it please the court, I'm Alan Hurst on behalf of Attorney General Labrador. I think that my friend here even agreed to some degree, I think everyone here agrees that the legislature was intending to comply with Miller. And here I speak specifically, especially of the 1976 legislature. I just heard a lot of discussion about the 2024 legislature that passed HB 710. HB 710 did not add the word homosexuality to the statute. It did not add any of the language that they are currently objecting to. All of that was present in section 18-1514 when that part of the statute was passed in 1976. And all of that has been criminally enforceable against everybody but public schools and public libraries for 49 years. We know from the history, we know from the legislative history like why the statute was passed. It was passed because Miller had been handed down by the Supreme Court. And we know that the- I'm sorry for interrupting you, Mr. Hurst. Your time is limited and there's a lot of issues raised here. And regardless of what the legislature may or may not have intended, there's only so much that we can do given the statutory text. So it would be helpful to me if you can focus on what's been referred to as the serious values clause and the context clause. There is broad language. Nothing here in contained is intended to include. So that suggests that there's incorporation through the whole definition. But at the same time, it's nestled within a particular subsection. So what do we do with that? Because we have to assume that the structural choice is purposeful and that limits what the serious values and context clause really applies to. So, Your Honor, the reason I'm talking about intent is because that's- once we have an ambiguous statute, like any degree of uncertainty about what the statute means, legislative intent is how we resolve that, right? And so the question is, if we're not sure what this herein clause, this serious value clause means, legislative intent should be our guide. And was to comply with Miller. How do we get to ambiguity if we are to assume that the structure is deliberately designed this way by the legislature? I'm not sure that we do assume that. So we've cited a couple, at least one case, and there are a couple of other ones where the Idaho Supreme Court looks at something of this nature and says, this doesn't make sense to us. This is an obvious misprint. And we are willing to do what the legislature obviously intended, even in a case of an obvious misprint. And in this case, one doesn't even need to like change words in the statute. And the misprint analysis comes from what? Come from the breadth of the language, nothing herein, that it's so broad that we are to infer that the legislature must have basically inserted it in the wrong subdivision. Well, so that language was put into the statute at the same time that the adult obscenity statute was passed with the clause. The adult obscenity statute has the exact same identical clause like my friend discussed earlier. Only in that case, there's a carriage return between the II section and the nothing here in the section. And then there isn't one in the child statute. And yes, I understand there's one kind of interpretation that would say under those circumstances, you assume the difference is intentional. I would suggest we're talking about an Idaho legislature in 1976. They don't have word processors. This was done on a typewriter. And if somebody just forgot to hit enter, you would get the difference. So how do we decide this? Well, again, what was the legislature's intent? That's what the Idaho Supreme Court tells us to look to when we've got a question like this. And the legislature's intent in 1976, clearer from the legislative history, is our old obscenity law is now unconstitutional. We need to pass a new one that complies. All right. So let's assume that we get past that issue and somebody forgot to hit enter on an old typewriter. How do you interpret in context in which it is used? That seems to suggest more than just an age differential. I know you made an argument about what tests we should adopt in terms of age differences, but the phrase in context in which it is used suggests to me something more than age. So that word context, I'm not sure what the whole phrase is. Not just the word take on what that phrase means. Certainly, Your Honor. I think some hints you can see in older Supreme Court cases. So Coyce versus Wisconsin, the Cleland's Memoirs case. In both of those cases, you have the Supreme Court looking to the context of the challenged work to tell whether it has value. So Coyce, it's a poem that's in a group of 10 poems inside a newspaper. And what does the court do? It doesn't say, is the whole newspaper obscene? It asks, is this one poem obscene that's in the newspaper? But then it looks to context. It uses that word context. And the context is, this is one poem among 10. It's in this newspaper. The context indicates that this poem was intended to have serious, it doesn't say serious value, because that's from Miller a few years later. But that this context was intended as a serious work of art. This poem was intended as a serious work of art. And so consequently, it's not obscene because in context, we can tell this is meant to be a poem rather than obscenity. So I think in context is something that the Supreme Court has done. I think that other courts have done it too. I don't have more citations I can give you than those two right now. But this notion that you can tell whether it has serious value based on how it's used is not something the legislature invented. That's from Supreme Court cases. Can I change the subject just a little bit? In Europe, the statute requires physically removing offending content to areas that are restricted for adults only. How would this age-based, I'll call it variable, obscenity standard work, if there's content that is obscene as to younger children, but not as to older teenagers? Where does that content go? In other words, if you've got a 17-year-old and a 12-year-old, who decides? Do you make the teachers, the parents, lawyers, basically, to make that determination? So a couple of responses. The first one is that this you know removed it to another room. I believe that's from the private right of action section of the statute, which we can't really consider that here because nobody in the court can enforce that. But it's part of the statute. Certainly. And in effect, what I struggle with here is with adults, fine, we got Miller. With young people, really young people, maybe got Miller. But then by having somebody make a decision, and as I understand it, statute would basically, under the suit situation, parents, teachers, librarians, somebody has to decide whether it goes in the adult section. And if you do that, and you have a 17-year-old for whom it might be appropriate, how does that work? I mean, that seems to me to deprive the 17-year-old, hypothetically, of the rights that he or she is entitled to under Miller, does it not? I definitely see that concern, Your Honor. And this part of the statute, I don't see any language in this part of the statute that says, you know, that the library needs to make a finer-grained distinction than adults and minors, right? But if they don't, they get sued, or possibly get sued. So if you have a parent that sees a particular work and thinks it's obscene, and says to the librarian, I want this book out of there, I want it in the adult section, you got 30 days, and the librarian says, how do I decide this? I'm not a lawyer, I don't know the constitutional law, how do I decide? If they decide it in a way that the parent doesn't like, they get sued. That's correct, Your Honor? That's a pretty serious impact on the First Amendment rights of these folks, is it not? I have to say again, first, there's nothing this court can do about that particular problem, because all that's at issue in this court is whether the Attorney General can sue for an injunction, and this is not part of that process. And so if a parent wants to bring that lawsuit, they're going to bring it in state court, where this court's decisions are only persuasive authority and not binding. And so this is just not a harm, to the extent it is a harm, it is not a harm that can be remedied in this proceeding. And why is that? Again, I'm just exploring with you on this. If the factual situation I described occurred, I think you, by your hesitancy, are saying that, yeah, there might be a problem here, but it's not your problem to solve. And yet we're dealing with an injunction that basically denied any, however narrowly confined, relief. Why wouldn't the nature of that problem be an appropriate focus of a very narrowed injunction? Well, I don't see how any injunction could affect that problem, and I don't concede that it's a I don't see any reason to read that as saying that something that is obscene only for 10-year-olds needs to be removed to an area that's only for adults. I read this part of the statute as saying, if it's obscene for all minors, then you have to put it in the adults-only section. But you see my point that a 17-year-old boy might be different than an 11-year-old girl, right, in terms of what they find to be of serious value for an interest, et cetera, right? Yes. I mean, all the cases on this, right, even the 11th Circuit Hamburger-Mary's case that they cite, the one that was decided in May, all of them recognize that what's obscene for one minor might not be obscene for another minor. And most of those cases that have dealt with that have dealt with these one-size-fits-all regulations, the Virginia versus American booksellers, the American booksellers versus Webb in the 11th Circuit, right? All of these cases dealt with statutes that applied equally to all minors and didn't have any mechanism for distinguishing between works that are obscene to 17-year-olds and works that are only obscene to 12-year-olds. And so they had to ask, wait, how do we decide whether this is obscene with respect to minors when the statute imposes a one-size-fits-all standard? And all of them came up with the answer of, well, with a one-size-fits-all standard, we're going to interpret the statute to only prohibit stuff that's obscene with respect to the 16 and 17-year-olds and not to touch anything that's obscene only for younger children. And in this case, we've got a kind of a division along the lines I just talked about. I'm troubled by that. I mean, maybe much of it's just fine, but the idea that teachers and librarians are going to get sued by parents that view it differently and have no way other than as, in effect, de facto judges and lawyers to remedy the problem, whichever way they decide, they've got a problem. Are we empowered to deal with that in terms of a limiting injunction? You can stop the attorney general from enforcing the law in certain circumstances. There's no question about that. The effect of that on private parties is, I think, not before the court. That said, I'll skip that. I forgot what I was going to say. I'll move on to a couple of other topics unless your honor has further questions there. I'm fine. All right. Thank you. Let me, if I can just follow up on that. I'm also troubled by the same notion because the problem is, as to my earlier question, you responded that, well, we can basically say that the serious value clause, something that has like artistic and literary merit can be interpreted with regard to the entire definition, right? Because it was just a scrivener's error that it wasn't meant to apply. But then in determining serious values, I think that there's a lot of adult novels that may actually fall within the description of harmful to minors that the school would have to then remove and take to an adults only section. The problem we have here. Do you do it that way? That given the definition of harmful minor that you're advancing, a lot of young adult novels that may actually have themes or may have and falls strictly within the definition of harmful to minors would then be swept up, despite the fact that it has serious values. If that is possible under the statute, we don't have evidence of it, right? I mean, and this is actually the response I want to make to judge Smith a moment ago, right? Which is the statute's been in effect for more than a year at this point, coming up on a year and a half. And we're not aware of any lawsuits that have actually been brought under it, not before they filed their suit, not after they filed their suit. We're also not aware of what works. They think the statute prohibits that they think are constitution protected because they haven't identified any. So we're on a very minimal record here. And on that record, I don't see how the court can possibly say that this statute, that the illegitimate applications, if there are any, substantially outweigh the legitimate applications of which we know they're, again, they're billions of gigabytes online of things that this can legally apply to that everybody agrees it can legally apply to. The problem I have with that is that this is a facial overbreath challenge. So we're going to have to figure out what has serious literary merit that fits within the definition of harmful to minors, but yet would then have to be moved to adults only section. But, but I wanted to move you to actually the substantive provision, 18-1517B, and then there's an A and a B. So what's, what's really, I would love to take your, get your take on this because A describes picture photographs, things that would, would appear to be very singular in its analysis. So it makes sense that there will be no taken as a whole language inserted in provision A, but motion picture film is also in A. And that very clearly, very obviously is a work that is comprised of many, many scenes. And that seems to really belong in subsection B, but yet it's not there. So what do we do with that? Well, I, I see your honor's point entirely. I would still say grammatically, right? In order for the prohibition to apply, it's looking over here at the statute, right? You need to say any motion picture film that is harmful to minors, right? So it still is the motion picture film that needs to be harmful to minors, right? It's not any motion picture film, any part of which is harmful to minors, right? It's, you have to look at the, the unit of analysis is still the work. It is not a portion of a work, even though it doesn't say taken as a whole the way B does. The reason B needs the, you know, taken as a whole language is because that's where compilations go. As I think your honor was recognizing. I know. I understand that. I understand that you want us to basically use a narrowing construction of motion picture film as a whole, but motion picture film is a lot like a book, right? It's comprised of many components, but look purposefully is in subsection B, but yet motion picture film isn't. And so I think, I guess what you're saying is that you want the taken as a whole language basically imported or exported to subsection A. I don't think it needs to be imported. I think that the question is whether the film of the film, excuse me, whether the motion picture film is harmful to minors. And I don't see how you could, how you could figure that out unless you looked at the film as a whole. If you just looked at if you have a large work that's composed of multiple portions and one of those portions is obscene and the other ones aren't, what are you supposed to do with that situation? The statute just does not expressly address that. And if it doesn't expressly address that, then yes, a limiting construction is the correct way to go. Both as a matter of Idaho statutory interpretation and as a matter of Supreme court first amendment case law. I don't, I don't see how we can do that because it's broken down here into two separate sections. It could just be one section under your argument. If everything is supposed to be looked at as a whole, we could just, I mean, we could just have a single section. I think we have to make some meaning of the fact that the legislature broke it down into parts here and put motion picture film in one part and books and things in the other, don't we? There's still meaning in section B. So if you notice section B incorporates section A, right? It's anything that includes stuff that's covered by section A. So you still need two sections to do that kind of thing. Even if you have taken as a whole somehow included in both of those. So no, I don't think there's a surplusage problem there, but even if there were, right, this whole notion that we're supposed to read meaning into every word and every bit of punctuation is just a canon. It's one of many cannons. There are other cannons, which include things like the presumption of constitutionality. And then in other places, I mean, that's the big one. We're trying to find legislative intent. If we think the legislature intended to comply with Miller, et cetera, which they must have because they quoted it for most of the language in the statute. And they said that they were trying to comply with it. If that's our situation, then that's the backdrop we need to read this against. And as long as there's a way, a reasonable way to do that, as long as the statute is readily susceptible to that interpretation is the Supreme Court phrase, then that's what needs to be done in order to the statute. Let me see if I can hit a few last points. Includes in its meaning. A lot was made of why is this one includes in its meaning different from means and all of the other subsections? And the answer to that is historical. That when includes in its meaning was added to the statute in 1976, there were two separate definitions that followed. It said includes in its meaning, and then there was roughly the current definition of harmful to minors. And then there was a subsection B that had other things that were also included in its meaning. So that's where includes in its meaning comes from. It was the only one in the section, the only definition in the section that contained alternative options for what is going to be included here in the definition. The second one of those alternative options was removed from the narrowed the scope of what's harmful to minors rather than expanding it. And so again, it's purely historical. My question in the opposite direction is if includes in its meaning is supposed to be all inclusive, then why did they say includes but not limited to later? It isn't that difference in language supposed to be meaningful that in one place they said includes but is not limited to. And in the other place they just said includes in its meaning without saying but is not limited to. So I don't see how the statute can be interpreted as broadly as they want it to be. Likewise for the homosexuality question. In that one, there is no way to read subsection three of that definition section as that will avoid surplus. Everything is already covered by physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, etc. It's all covered in that already. The legislature was not concerned about avoiding surpluses here. So how do we read homosexuality? We read it as being homosexual, acts of homosexuality is the statutory phrase. Acts of homosexuality does not mean same-sex child rearing. This statute is the statute that Idaho uses to prohibit the giving straight up hardcore internet pornography to minors. We are not aware of any other such statute in the code. If it is facially invalidated, it will be legal for everyone to give that or at least to these schools and libraries to give hardcore internet pornography to minors. That core of legitimate application needs to be protected, even if on the edges of this, any of it needs to be modified. Your time is up. Let me ask my colleague whether either has additional questions. No, thank you. No, thank you. I think not. All right, Mr. Chauvel, you have a little rebuttal time. Thank you very much, Your Honor. To begin with, I think we all agree that the point here is to discern legislative intent, but legislative intent is discerned in the first instance from the text and structure of the statute and not immediately by reference to legislative history. Here, just to go to Judge Nguyen's questions, the structure is meaningful, but even beyond the structure, the substance is meaningful. If the structure alone were the only issue, that might lead the court one way, but there are a number of issues with the clause found in subromanent two that include but extend beyond structure to go to substance. I think it's incorrect, as my friend said, to suggest that the statute simply quotes Miller. There are a number of statutes in the Washington that do that. This one is not one of them. Those statutes, and beyond Colorado, Kansas, Louisiana, Mississippi, North Dakota, take the elements from Miller and incorporate them into harmful to minor statutes in a way that is understandable and coherent. That is not what HB 710 does. I'm also struck by our continued conversation about the intent of the 1976 legislature when we are here to interpret and understand the purpose of the 2024 legislature who made modifications to the earlier law and enacted that. I think that's the relevant question, not what the 1976 legislature thought. I think it's also striking that my friend has backed off an argument that they made very aggressively in the district court and in their responsive brief starting on page 44, which is that the context clause distinguishes among age groups. I think if I heard my friend correctly, he has now changed that argument to suggest that the statute, in fact, renders obscene only those materials that are obscene for older minors. It's possible I misheard that, but I think he's backing off the argument that they've made throughout. If that's true, that's interesting, but I think it at most points to the fact that that clause has no meaning. I think I heard him suggest that taken in context means essentially the same thing as as a whole. So he was pointing to Coase and other cases that reference particular images in a broader work, but that clause in subroman at two says taken as a whole. So it can't mean that because that language is already found in that particular clause. So I think that's what led my friend's colleagues to come to a different conclusion about what that clause meant because the argument that he's asserting was foreclosed by the plain language. I think it's important to note, your honor pointed out correctly that there haven't been lawsuits by county prosecutors or but of course our clients and particularly in the First Amendment context are not subject to the noblesse oblige of those who are charged with enforcing this statute. This statute imposes real burdens on the schools that we represent who are not intending in any way to use obscene materials and want only to use those materials that they've used year in and year out to educate their students. I see that my time has run up. I'm happy to answer any other questions that the court has. Do either of my colleagues have additional questions? No, thank you. I think not. Thanks to both the counsel for your very helpful argument in this case. Case of Northwest Association of Independent Schools versus Labrador is submitted and the court stands adjourned for the day. Thank you, your honors. Court stands adjourned. Thank you.
judges: SMITH, NGUYEN, THOMAS